**UNITED STATES of America on Behalf of its Agency INTERNAL REVENUE SERVICE, Appellant,**

**v.**

**William H. NORTON, Carrie W. Norton, f/k/a Carrie A. Woodward, Appellees.**

Nos. 82–1836, 82–1837.

United States Court of Appeals, Third Circuit.

Argued July 21, 1983.

Decided Sept. 12, 1983.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Wynette J. Hewett (argued), Bruce R. Ellison, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellant; Peter F. Vaira, Jr., U.S. Atty., Philadelphia, Pa., of counsel.

Mitchell W. Miller (argued), Philadelphia, Pa., for appellees.

Before ADAMS and HIGGINBOTHAM, Circuit Judges, and TEITELBAUM, District Judge [*].

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Shortly after the debtors filed a petition for an adjustment of their debts under the Bankruptcy Reform Act of 1978, hereinafter referred to as the Code, the Internal Revenue Service (IRS) retained a portion of a tax overpayment that was due the debtors. The principal issue before us in this appeal is whether this action by the IRS violated the automatic stay provisions of the Code. We hold that it does.

### I

On October 2, 1980, William and Carrie Norton, the appellees filed a petition for an adjustment of their debts under Chapter 13 of the Code. In their plan, the Nortons scheduled the IRS as the holder of a priority tax claim with respect to an income tax deficiency for 1978 in the amount of $762.00.[1] The plan stipulated for payment in full of that claim over a three year period.[2]

Before the plan was confirmed on April 23, 1981, the debtors filed an income tax return for the 1980 tax year, which showed that they were entitled to a refund of $2,052.78. The IRS refunded $1,314.81, but retained $737.97 on account of the Nortons' 1978 tax liability. Thereafter, on May 14, 1981, the debtors filed an application with the Bankruptcy Court seeking release of the $737.97 that had been retained by the IRS. The Bankruptcy Court found that the IRS was not entitled to retain the $737.97 and ordered that that sum be returned to the debtors.[3] The Bankruptcy Court also found that, in retaining the debtors' tax refund, the IRS had violated the automatic stay the Code imposes on creditors of a debtor who files a petition under Chapter 13.[4] Finally, because of the IRS policy of retaining the refunds of all taxpayers who have filed a petition under the Code,[5] the Bankruptcy Court held the IRS in contempt and imposed a fine of $150.00.[6] The IRS appealed from these judgments to the District Court which affirmed both the con-

---

[*] Honorable Hubert I. Teitelbaum, Chief Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. The Bankruptcy Code gives a sixth order priority to:
   ... allowed unsecured claims of governmental units to the extent that such claims are for ... a tax on or measured by income or gross receipts ... for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due....
   11 U.S.C. § 507(a)(6)(A)(i) (1979).

2. The Code stipulates that a plan shall:
   ... provide for the full payment, in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim.
   11 U.S.C. § 1322(a)(2) (1979).

3. The Bankruptcy Court's opinion is reported at 15 B.R. 623 (Bkrtcy.E.D.Pa.1981). The rec-

ord does not make clear why the IRS withheld less than the assessed tax deficiency of $762.00.

4. Section 362 of the Code provides that a petition filed under Chapter 13 operates as a stay of "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title ... against any claim against the debtor...." 11 U.S.C. § 362(a)(7) (1979).

5. IRS Manual Supplement 5G–249 (Rev. 1) (June 2, 1980).

6. In a separate opinion and order, the Bankruptcy Court denied the IRS's petition for relief from the automatic stay for failure to state a cause of action upon which relief could be granted. *United States v. Norton (In re Norton),* 15 B.R. 627 (Bkrtcy.E.D.Pa.1981). The IRS has not appealed this denial.

tempt citation and the Bankruptcy Court's order that the full refund be turned over to the debtor. *United States v. Norton (In re Norton),* 9 B.C.D. 1033, 32 B.R. 698 (E.D.Pa. 1982). The IRS has filed a timely appeal.

## II

The legislative history of the Bankruptcy Reform Act is replete with references to the effect the proposed legislation would have on the collection of taxes. *See, e.g.,* S.Rep. No. 1106, 95th Cong., 2d Sess. (1978) (Committee on Finance); S.Rep. No. 989, 95th Cong., 2d Sess. (Judiciary Committee) *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787. These references make clear that the Bankruptcy Code attempts to reconcile three sets of interests that usually co-exist in tension: the interests of general creditors who do not want a debtor's funds to be exhausted by accumulated back taxes; the interests of debtors whose "fresh start" should not be burdened by accumulated taxes; and the interests of the public in not losing taxes whose collection the law has restrained.

In balancing these interests, the Congress gave the IRS a priority claim on the assets of a debtor's estate for tax liabilities that had not grown so "stale" as to burden general unsecured creditors who may have extended credit after the liabilities arose. To avoid hampering the debtor's fresh start, Congress coordinated the priority and discharge provisions of the Code so that unpaid taxes accorded priority are nondischargeable, while tax claims that are not given priority are usually not collectible from the debtor's post-bankruptcy assets. S.Rep. No. 1106, *supra* at 5; S.Rep. No. 989, *supra* at 14–15.

The IRS, in the case at bar, is in the preferred position of holding a secured claim with priority. Section 506 of the Code declares that an allowed claim of a creditor subject to setoff under § 553 is secured to the extent of the amount subject to setoff. The unsecured balance of a tax claim on income greater than the amount of the setoff is accorded priority under § 507(a)(6). A Chapter 13 plan must pro-vide for full payment of priority claims and must provide for payment to a holder of a secured claim of an amount not less than the allowed secured claim. 11 U.S.C. §§ 1322(a)(2), 1325(a)(5) (1979). Tax claims entitled to priority under § 507(a)(6) are not dischargeable in a Chapter 13 case, and there can be no composition of priority tax debts. *Id.* §§ 523(a)(1)(A), 1322(a)(2). Finally, to the extent that the claim of the IRS for back taxes is secured, the debtor must provide "adequate protection" to insure that the government receives the "indubitable equivalent" of its claim; the debtor can do so by making "periodic cash payments" to the creditor. *Id.* § 361(1) and (3).

The plan for the adjustment of their debts filed by the Nortons and confirmed by the Bankruptcy Court provided for payment in full of the Government's priority claim on the pre-petition tax liability. The debtors have been conscientious in conforming to the terms of that plan. Each time they make a scheduled payment, the IRS refunds the amount of the payment from the monies it withheld. Transcript of Oral Argument at 15. The IRS refuses to honor the turn-over order of the Bankruptcy Court and argues that its partial retention of the Nortons' tax overpayment does not violate the automatic stay that the Code imposes on attempts by creditors to satisfy their claims against petitioners in bankruptcy.

## III

Typically, a debtor has already been sued or threatened with legal action by the time a voluntary petition is filed. To ease the financial pressures—legal and extra-legal—that forced the debtor into bankruptcy, the Code provides that the filing of a petition results in an automatic stay of most actions by creditors to satisfy their claims against the debtor. 11 U.S.C. § 362 (1979).

The automatic stay has been described as one of the most fundamental protections accorded debtors under the bankruptcy laws. "It gives the debtor a breathing spell from his creditors. It stops all collection

efforts, all harassment, and all foreclosure actions," while the debtor attempts to reorganize or develop a plan by which to satisfy the claims of his creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6296. These features of the stay mechanism are designed to protect creditors as well as debtors. As the Report by the House Committee on the Judiciary put it:

> ... without [the automatic stay], certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of [their] claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

*Id.*

■ The scope of the automatic stay is broad. It prohibits, among other things, any act to obtain possession of property belonging to the debtor's estate, any act to collect on a claim against the debtor that arose before the filing in bankruptcy, and any act to set off a debt owing to the debtor that arose before the filing. 11 U.S.C. § 362(a) (1979).

This last prohibition restrains a creditor from setting off a claim of the debtor against a debt owing to the creditor. That right is generally preserved in the Bankruptcy Code, which "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor...." 11 U.S.C. § 553 (1979). However, by the very terms of § 553, that right is limited by the automatic stay provisions of § 362.[7] Thus, before a setoff can be made against

the debts owed by a petitioner in bankruptcy, a creditor must seek relief from the automatic stay. Even setoffs effected before bankruptcy may be investigated and reviewed by the Bankruptcy Court. *Id.* §§ 553(a)(3) and (b)(1).

The interaction of sections 553 and 362 and the precise meaning of the term setoff form the core issue of this case. The Nortons and the courts below agree that the IRS violated the automatic stay imposed by section 362 in withholding the Nortons' 1980 tax refund and setting it off against their pre-petition tax debts. The IRS maintains that, in withholding a portion of the Nortons' overpaid taxes, it has not violated the automatic stay. Rather it has simply "frozen" the debtors' account so as to preserve its setoff rights against the Nortons. The automatic stay does not extinguish setoff rights, according to the Government; it simply postpones their enforcement. In concluding that the retention of the debtors' funds by the IRS violated the automatic stay, the courts below, in the Government's view, erroneously equated the retention of funds and the exercise of a setoff and, thus, ignored the IRS's right to credit overpayments against tax liabilities as specified in the Internal Revenue Code and preserved in the Bankruptcy Code.

This is not the first time that the IRS's policy of retaining overpaid taxes has led to litigation in the bankruptcy courts,[8] although it appears to be the first time that a court of appeals has been called upon to review this apparently vexatious controversy that has arisen between the IRS and the bankruptcy bar.

### A

The Government argues that since the IRS did not credit the Nortons' overpay-

---

**7.** Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, ....

11 U.S.C. § 553(a) (1979).

**8.** *See, e.g., In re Internal Revenue Service Liabilities and Refunds in Chapter 13 Proceedings,* 30 B.R. 811 (D.C.M.D.Tenn.1983); *United States v. Powers (In re Powers),* 28 B.R. 86 (Bkrtcy.E.D.Pa.1983); *United States v. Perry (In re Perry),* 26 B.R. 599 (Bkrtcy.E.D.Pa.1983); *United States v. Harris (In re Harris),* 19 B.R. 624 (Bkrtcy.E.D.Pa.1982); *Mealey v. Dep't of the Treasury (In re Mealey),* 16 B.R. 800 (Bkrtcy.E.D.Pa.1982); *Wilson v. I.R.S. (In re Wilson),* 29 B.R. 54 (Bkrtcy.W.D.Ark.1982).

ment against their delinquent tax liabilities, the IRS has not set off the Government's claim against the Nortons' debt. Rather the IRS has simply frozen the Nortons' account to preserve its setoff rights and, thus, has not violated the automatic stay.

To buttress its argument that a retention of funds does not constitute a setoff, the IRS turns to the Internal Revenue Code of 1954, which stipulates that the IRS may credit an overpayment against any tax liabilities of a claimant seeking a refund. 26 I.R.C. § 6402(a) (Supp.1983). A setoff occurs, the Government urges, only when an overpayment is credited against a delinquent liability; since the IRS did not actually credit the Nortons' account, their retention of the overpayment is not a setoff.

The Bankruptcy Court rejected this argument and asserted that under Pennsylvania law a setoff is accomplished when a creditor gives "sufficient evidence of intent" to make a setoff. *See Goldstein v. Jefferson Title and Trust Co.,* 95 Pa.Super. 167, 170 (1928). The Bankruptcy Court held that the retention of funds that the IRS admits were due the debtors demonstrates an intent to effectuate a setoff in violation of the automatic stay provisions of the Code. On appeal, the IRS challenges this ruling of the Bankruptcy Court. The Government renews its assertion that § 6402 of the Internal Revenue Code defines the right of the IRS to merge offsetting claims of the Government and taxpayers; state law, the Government insists, cannot override a setoff right derived from federal law.

In preserving the right of a creditor to offset mutual obligations with a debtor (insofar as the exercise of that right has not been stayed), section 553 of the Bankruptcy Code neither defines 'setoff' nor explains when a setoff has occurred. Thus, this provision is not an independent source of law governing setoff; it is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of non-bankruptcy law. *See, e.g., Com-*

merce Union Bank v. Haffner (In re Haffner), 12 B.R. 371, 373 (Bkrtcy.E.D.Tenn. 1981); Freeman, Setoff under the New Bankruptcy Code: The Effect on Bankers, 97 Banking L.J. 484, 488–89 (1980).

■ The same is true of section 68a of the Bankruptcy Act of 1898, the predecessor of section 553, whose language is less permissive than the modern law in declaring that "one debt shall be set off against the other, and the balance only shall be allowed or paid." 11 U.S.C. § 108(a) (1971). Even that statute, which on its face seems to mandate the cancellation of mutual debts, has been interpreted as giving broad discretion to the courts and as recognizing setoff rights only "as established in common law and equitable procedure." *Cumberland Glass Manufacturing Co. v. Dewitt,* 237 U.S. 447, 455, 35 S.Ct. 636, 639, 59 L.Ed. 1042 (1914). The broad equitable discretion of courts in recognizing setoff rights defined by the common law has been carried over to the Bankruptcy Reform Act of 1978 and in particular to section 553, whose language is permissive, not mandatory. "Its application, when properly invoked before a court, rests in the discretion of that court, which exercises such discretion under the general principles of equality." 4 Collier on Bankruptcy ¶ 553.02, at 553–11 (15th ed. 1983).

■ We conclude that the courts below were correct in looking to state law to determine when a setoff has occurred. Under Pennsylvania law, the retention of a debtor's funds by a creditor provides sufficient evidence of an intent to setoff. *Pittsburgh National Bank v. United States,* 657 F.2d 36 (3d Cir.1981). The Government may be correct in arguing that a national policy should govern IRS setoff rights, but that argument must be addressed to the Congress.[9] Nothing in the Bankruptcy Code or its legislative history indicates that the Congress intended "a special exception for the tax collector" to the general principles governing section 553. *See United States v. Whiting Pools, Inc.,* —— U.S.

**9.** *See Commonwealth Nat'l Bank v. U.S. (In re Ashe),* 669 F.2d 105 at 110–111 (3d Cir.1982) (describing Congress' substitution of state law

for uniform federal standard once governing bankruptcy proceedings).

——, ——, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515 (1983).

This Court has already prohibited banks from setting off debts against a corporate account during the pendency of a reorganization proceeding, unless those banks first request and receive relief from the automatic stay in a bankruptcy court. *In Re Penn Central Transportation Co.*, 453 F.2d 520 (3d Cir.1972). Without the automatic stay of setoff rights during reorganization, the Court reasoned, the loss of bank accounts and of accounts receivable would probably prove fatal to many otherwise viable businesses. If a bank could freeze the debtor's accounts upon the filing of a petition in bankruptcy, the debtor's chances for successful rehabilitation would be substantially diminished.

The same reasoning applies *mutatis mutandis* to proceedings under Chapter 13 of the Code, which is designed to encourage and make possible the payment, rather than the discharge of debts. The automatic stay protects debtors from their creditors and creditors from themselves while a repayment plan is developed. If a creditor could circumvent the automatic stay simply by delaying the entry of a setoff or credit in its books, it could hold the funds until the case was closed and then deposit them into its own bank account. By the unilateral action of one creditor, these funds would become unavailable for distribution to other creditors or for use by the debtor in a Chapter 13 plan, thus making it that much less likely that the debtor could be rehabilitated.

### B

It is also contended by the Government that the automatic stay provisions of the Code were not meant to modify creditor rights, but simply to stay their enforcement pending an orderly examination of the debtor's affairs. *See* H.R.Rep. 595, *supra* at 342; S.Rep. 989, *supra* at 51. Thus, the Bankruptcy Court is said to have frustrated the aims of those who drafted and enacted the Code in ordering that the IRS return

the Nortons' overpayment. Compliance with that order, the Government maintains, would in effect extinguish the creditor's right to set off mutual claims and debts because the IRS would no longer have any funds to set off against the Nortons' tax liabilities.

The historical antecedents of setoff rights are long and venerable and are based on the common sense notion that "a man should not be compelled to pay one moment what he will be entitled to recover back the next." Loyd, *The Development of Setoff*, 64 U.Pa.L.Rev. 541, 541 (1916). Although the Code does not expressly distinguish the right of setoff and the exercise of that right, those who drafted that legislation clearly saw setoff as a right that should be preserved. They also knew that its free exercise could inhibit rehabilitation and bankruptcy policies like the fair distribution of funds that are inadequate to satisfy the debts of the petitioner in bankruptcy:

> The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement. During the repayment period, creditors may not harass the debtor or seek to collect their debts. They must receive payments only under the plan. This protection relieves the debtor from indirect and direct pressures from creditors, and enables him to support himself and his dependents while repaying his creditors at the same time.

H.Rep. 595, *supra* at 118; *see also id.* at 274, U.S.Code Cong. & Admin.News 1978, p. 6079.

■ Even creditors whose claims are secured under the Code must submit to the risk inherent in judicial suspension of the rights they normally would have to enforce their claims against property of the debtor.[10] *United States v. Whiting Pools, Inc.*,

---

**10.** Section 1322 of the Code specifically authorizes a modification by plan of the rights of

—— U.S. ——, ——, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983); *In re Penn Central Transportation Co.,* 453 F.2d 520, 523 (3d Cir.1972). In the present proceeding, the Bankruptcy Court clearly acted within its powers in staying a setoff of the Nortons' overpayment against their tax liabilities, pending the development of a plan by which the debtors could pay off their creditors completely. Such a plan was confirmed by the Bankruptcy Court before the IRS withheld a portion of the Nortons' overpayment.

The provisions of a confirmed Chapter 13 plan bind the debtor and each creditor, whether or not the plan provides for the claim of a particular creditor. 11 U.S.C. § 1327(a) (1979). Any party in interest may object to the confirmation of a plan, and the Bankruptcy Court must give notice and an opportunity for such objections to be heard. *Id.* § 1324. Unless the plan provides otherwise, the property of the estate vests in the debtor upon confirmation and comes free and clear of any claim or interest of any creditor provided for by the plan. *Id.* § 1327. Property the debtor acquires after the commencement of the proceeding, but before the case is closed is included in the property of the estate.[11] *Id.* §§ 541, 1306(a)(1).

■ Here, the Bankruptcy Court gave the IRS notice and an opportunity to have its objections to the proposed plan heard, an opportunity the IRS failed to take. Upon confirmation, the IRS became bound to that plan and to the payment schedule that would satisfy its claim in full. The Nortons have been faithful to their obligations under the plan. To allow the IRS to retain their overpayment as extra security on the debt would seriously compromise the powers of the Bankruptcy Court, the capacity of debtors to rehabilitate, and the equitable distribution that the Bankruptcy Code is designed to foster.

## IV

■ The Government also appeals the order of the Bankruptcy Court holding the IRS in contempt and imposing a fine. The Government argues that:

1) the Bankruptcy Court's order was in the nature of a criminal contempt sanction and, therefore, beyond the court's presence;

2) the doctrine of sovereign immunity bars the imposition of criminal contempt sanctions against the IRS; and

3) the automatic stay is not a clear and definitive order with regard to setoff rights, and, thus, no sanction, criminal or civil, should be imposed.

Although we are troubled by the apparently criminal character of the sanction imposed by the Bankruptcy Court,[12] we find it unnecessary to resolve this matter or to decide whether sovereign immunity bars the imposition of a criminal contempt sanction against the IRS.

A party should not be held in contempt unless a court first gives fair warning that certain acts are forbidden; any ambiguity in the law should be resolved in favor of the party charged with contempt. *International Bhd. of Teamsters v. W. Pa. Motor Carriers Ass'n,* 660 F.2d 76, 82 (3d Cir.1981); *United States v. Christie Indus., Inc.,* 465 F.2d 1002, 1006 (3d Cir.1972). Whether the retention of tax overpayments constitutes a setoff in violation of the automatic stay is a much litigated and controversial question.[13]

---

most holders of secured claims and all holders of unsecured claims. 11 U.S.C. § 1322(b)(2) (1979).

**11.** After a plan has been confirmed, the Bankruptcy Court may order "any entity from whom the debtor receives income to pay all or any part of such income to the trustee." 11 U.S.C. § 1325(b) (1979). "Entity," as used in the Code, includes governmental units, *id.* § 101(14), and "entity from whom the debtor receives income" has been interpreted to include all persons owing money to the debtor. 3 W. Norton, Bankruptcy Law and Practice §§ 77.12 at 16 (1981).

**12.** *See Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1342–44 (3d Cir.1976); *United States v. Spectro Foods Corp.,* 544 F.2d 1175, 1182–84 (3d Cir.1976).

**13.** *See* note 8 *supra.*

Inasmuch as the answer to that question was unclear at the time the tax refund was withheld by the Government, we believe that the IRS did not have fair warning that its retention of the funds was per se a violation of the automatic stay.

### V

The judgment of the district court will be affirmed to the extent that it orders the IRS to return the funds it has withheld in violation of the automatic stay and reversed to the extent that it affirms the contempt citation.