**In re Howard E. DAVIDSON, Debtor.**

**Bankruptcy No. 88–06390.**

United States Bankruptcy Court,
D. New Jersey.

Aug. 24, 1990.

Freeman, Mintz, Hagner & Deiches, P.A. by Ira R. Deiches, Haddonfield, N.J., for debtor.

Gregory S. Hrebiniak, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The matter before this Court is a motion entitled "Notice Of Motion For Order Determining Legality And Amount of Assessment Of Internal Revenue Service And For Other Relief" filed on February 21, 1989 on behalf of the debtor, Howard E. Davidson, ("Debtor"). By that motion the Debtor sought an Order of this court: (1) determining the amount and legality of any assessment made by the United States Internal Revenue Service ("IRS") pursuant to 11 U.S.C. § 505 of the United States Bankruptcy Code ("Code"); (2) determining the nature and amount due and owing to the IRS by Debtor, if any; (3) determining the dischargeability of any such liability; (4) in the absence of sufficient response and proofs, determining that liability, if any, of Debtor to the IRS prior to commencement of this case has been discharged; (5) compelling the turnover of Debtor's income tax refund; (6) and granting such other and further relief as is just. The relevant facts follow.

On March 14, 1988, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Reform Act of 1978 as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, and the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986 ("Bankruptcy Code"), Docket No. 88–01695. The IRS was scheduled as a creditor in that case and on May 5, 1988 filed a proof of claim asserting unsecured priority claims for the tax periods 1979, 1981, 1982, 1983 and 1985 in the total amount of $45,833.71. That proof of claim set forth the following claim for income taxes:

| Period | Assessment Date | Tax | Interest |
|--------|------------|-----|----------|
| 1979 | 3/5/84 | $ –0– | $2,443.54 |
| 1981 | 10/21/87 | $48,895.00 | $50,539.19 |
| 1982 | 10/21/87 | $26,971.00 | $22,593.89 |
| 1983 | 11/16/87 | $ 182.00 | $ 150.83 |
| 1985 | 6/9/86 | $ 1,705.00 | $ 341.24 |

On September 6, 1988, Debtor's case was dismissed by order of this court pursuant to a Motion to Dismiss filed by the Debtor on notice to creditors including the IRS. In

the Debtor's Affidavit filed on June 23, 2988 in support of the Motion for Dismissal, the Debtor stated that for several years he had been represented by Jay E. Goldfarb, Esquire of the firm of Giacobetti, Gross, Goldfarb & Spigler in connection with tax matters, and that relying on information obtained by Mr. Goldfarb that the latest assessment by the IRS was made on June 10, 1987, a Chapter 7 petition was filed on March 14, 1988. The Debtor further stated in that Affidavit:

1. It is now clear to me that Mr. Goldfarb inadvertently provided me with incorrect information with respect to the dates of assessment by Internal Revenue Service, and as a result, I am presently unable to avail myself of the appropriate discharge provisions of the Bankruptcy Code.

2. It was the threat of enforcement activity by Internal Revenue Service that precipitated the commencement of this case and, upon review, if the substantial claims of Internal Revenue Service are not, apparently, subject to discharge, I do not perceive any meaningful reason to allow this case to continue before the Court.

3. I am hopeful that the Court will recognize that the filing of this case was apparently based upon incorrect informa-

tion obtained from Mr. Goldfarb through mistake and/or inadvertence and that, consequently, cause exists for dismissal, since my primary purpose for filing will not be realized through this case.

On September 28, 1988, 22 days after the dismissal of Debtor's first Chapter 7 case, the Debtor filed the instant Chapter 7 petition, Docket No. 88–06390. On February 6, 1989, the Debtor obtained a discharge in this case.

This motion raises two issues. The first issue is whether the IRS's claims for income taxes for the years 1979 through 1985, respectively have priority status pursuant to 11 U.S.C. § 507(a)(7)(A)(ii) and are non-dischargeable purusant to 11 U.S.C. § 523(a). The second issue is whether the IRS's retention of Debtor's 1987 tax refund in the amount of $775.00 on or about December 26, 1988 represents a set-off by the IRS against a claim due for the tax period ending December 31, 1981 in violation of the automatic stay of 11 U.S.C. § 362(a). Each of these issues will be discussed in turn.

In the Debtor's Affidavit filed February 21, 1989 in support of the instant motion, the Debtor asserted that the IRS holds the following claims against debtor in the following respective amounts:

I.  Priority Claims

19831040 Liability in the amount of $    465.29
19851040 Liability in the amount of $  2,282.47

II.  General Unsecured Claims

1979  1040 Liability in the amount of $  17,132.53
1980  1040 Liability in the amount of $      835.00
1981  1040 Liability in the amount of $127,092.88
1982  1040 Liability in the amount of $ 65,313.15

---

In subsequent pleadings in this matter the debtor argues that his liabilities to the IRS for any period prior to 1985 is a general unsecured claim.

The Debtor presents a three-fold argument that the IRS's claims for taxes from 1979 through 1983 are general unsecured

claims not entitled to priority and therefore dischargeable. First, the Debtor contends that the IRS's claims for taxes for years 1979, 1980, 1981, 1982 and 1983 represent unsecured claims for a tax measured by taxable income for taxable years for which

a return was last due before three (3) years before the commencement of the case. Accordingly, the Debtor argues that the IRS's claims cannot obtain priority status pursuant to 11 U.S.C. § 507(a). Second, the Debtor argues that the IRS's claim includes taxes assessed outside of the 240–day period before the commencement of the Debtor's bankruptcy case or prior to February 1, 1988, and thus these claims do not obtain priority status pursuant to 11 U.S.C. § 507(a). Third, the Debtor argues that the IRS's tax claims are not for taxes not assessed but assessable after the commencement of the Debtor's bankruptcy case. The Debtor also contends that all liability to the IRS for the tax years 1979 and 1980 were paid through allocations of proceeds of the sale of real property owned by his former wife. (Debtor's Affidavit at ¶ 4).

The Debtor argues that his liabilities, if any, to the IRS for the years prior to 1985 are general, unsecured liability, and not subject to priority status pursuant to 11 U.S.C. § 507(a)(7), not excepted from discharge pursuant to 11 U.S.C. § 523, and discharged by order of this court dated February 6, 1989.

In the Response of the United States filed on March 27, 1989 the United States Attorney on behalf of the IRS alleges that as of September 28, 1988, the Debtor had unpaid income tax liability as follows:

| PERIOD | ASSESSMENT DATE | TAX | INTEREST | PENALTY |
|--------|-----------------|-----|----------|---------|
| 1981 | 10/21/87 | $48,120.00 | $63,725.00 | $28,230.00 |
| 1982 | 10/21/87 | $26,961.00 | $26,455.00 | $21,406.00 |
| 1983 | 11/16/87 | $ 182.00 | $ 177.00 | $ 159.00 |
| 1985 | 6/9/86 | $ 1,705.00 | $ 456.00 | $ 426.00 |

By that response the IRS states that the Debtor's income tax refund for the year 1987, in the amount of $775.00 was offset on December 26, 1988 against the Debtor's 1981 income tax liability.

The IRS argues that its claim for taxes for the years 1981 through 1985 have priority status pursuant to § 507(a)(7)(A)(ii). The IRS disputes the Debtor's claim that the 1981, 1982 and 1983 taxes were not assessed within 240 days of the filing of the second bankruptcy petition. First, the IRS argues with regard to the assessment date that the Debtor has failed to consider the period of the initial bankruptcy petition which was filed on March 14, 1988 and dismissed on September 6, 1988. The IRS further argues that it was stayed pursuant to § 362 from collection during the duration of the first bankruptcy case accordingly the time period contained in § 507(a)(7)(A)(iii) should be tolled during the period of the first case. The IRS contends that the Debtor's filing of his first bankruptcy case, which forestalled the IRS' collection efforts for over five months, and then the dismissal of that case and the refiling after the 240 day period had elapsed, is an abuse of the bankruptcy process. The IRS takes the position that the time of the first bankruptcy should be disregarded in calculating the 240–day rule. Accordingly, the IRS argues that the debtor's tax obligations which were assessed in October and November 1987 fall within 240 days of Debtor's second bankruptcy filing.

The Debtor conceded that any liability for unpaid taxes for the year 1985 are entitled to priority by virtue of § 507(a)(7)(A)(i) (as income taxes due after three (3) years before the date of the petition). While the March 27, 1989 Response of the IRS asserted claims against the Debtor for unpaid income tax liability for the period 1981, 1982, 1983 and 1985 only, counsel for the IRS at oral argument denied that only liability for three (3) years (1981, 1982 and 1983) remained in dispute. The court will also consider in this decision the tax liability for 1979 previously asserted by the IRS in its proof of claim and the

tax liability for 1980 scheduled by the Debtor.

■ The first issue in this case is whether the time period of the first bankruptcy is calculated for purposes of determining pursuant to 11 U.S.C. § 507(a)(7)(A)(ii) if the IRS's claims for income taxes for the years 1981 through 1983 were assessed within 240 days of the Debtor's petition date, or whether the period of the first bankruptcy is disregarded in calculating the 240-day period.

Section 523(a)(1) of the Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

Section 507(a)(7)(A)(ii) of the Bankruptcy Code provides in pertinent part:

(a) The following expenses and claims have priority in the following order:

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition;

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

In regard to the 1979 and 1980 tax liability, regardless of the court's consideration of a tolling period for the period of the first petition, these claims do not fall within any of the categories of priority unsecured claims contained in § 507(a)(7)(A) as a tax on income due after three (3) years before the filing of the petition (§ 507(a)(7)(A)(i)); a tax assessed within 240 days before the filing of the petition (§ 507(a)(7)(A)(ii)); or a tax not assessed before, but assessable after the commencement of the case (§ 507(a)(7)(A)(iii)). Accordingly, these claims are general unsecured claims, included within the scope of the debtor's discharge.

Under §§ 523(a)(1) and 507(a)(7)(A)(ii) of the Code, an income tax obligation of the debtor is not dischargeable if the IRS assessed the tax obligation within 240 days of the date that Debtor filed its petition. In this case, the IRS made assessment for the tax years 1981, 1982, 1983 on October 2, 1987 and November 16, 1987. (*See* IRS's Proof of Claim). Clearly, the assessments were made within 240 days of the date the Debtor filed his first Chapter 7 petition on March 14, 1988. Less clear, is the question of whether for purposes of § 507(a)(7)(A)(ii) the IRS's assessments in October and November 1987, were made within 240 days of Debtor's second Chapter 7 petition filing on September 28, 1988. The Debtor argues that by considering only upon the filing date of the second petition (and disregarding the filing date of the first petition), the IRS's 1987 assessments are clearly outside the 240-day grace period. Conversely, the IRS argues that the time of the first petition filing should be disregarded in calcu-

lating the 240–day grace period under § 507(a)(7)(A)(ii). According to the IRS, the running of the 240–day grace period should be tolled from March 14, 1988, the filing date of the first petition and September 6, 1988 when that first case was dismissed, and run again from September 6, 1988 to September 28, 1988, the date the Debtor's second petition was filed. Using this method of calculation, the assessments made in October and November 1987 would fall within 240 days of September 28, 1988, when the Debtor's second bankruptcy petition, the present case, was filed.

The IRS argues that under § 362 it was unable to collect the 1981, 1982, and 1983 tax obligations during the almost 6 months that the Debtor's first Chapter 7 case was pending, thus the 240–day assessment period should be treated as tolled for purposes of determining its priority claim status pursuant to § 507(a)(7)(A)(ii) and the nondischargeability of its claim pursuant to § 523(a)(1)(A).

In support of the its position, the IRS principly relies upon two cases, *In re Brickley*, 70 B.R. 113 (9th Cir.BAP 1986) and *In re Molina*, 99 B.R. 792 (S.D.Oh. 1988).

In *Brickley*, the debtors filed their first bankruptcy petition under Chapter 13 in November 1981. During the period of May 1982 until April 1984, the IRS filed its proofs of claims and amendments for the tax years 1979 and 1980. After the debtors were unable to make payments under their Chapter 13 plan, they filed a "Motion for Termination of Chapter 13 Proceedings." There were no objections, and on September 11, 1984, the Bankruptcy Court signed an "Order Terminating Chapter 13". On October 3, 1984, prior to the Chapter 13 dismissal but after the "termination", the debtors filed a petition under Chapter 7. The debtors received a Chapter 7 discharge on January 28, 1985. In that case the court considered § 523(a)(1) and § 507(a)(7)(A)(i) which provides that an income tax obligation of the debtor is not dischargeable if the last date on which a tax return could have been filed falls with-

in three years of the date of the filing of the petition.

Before the bankruptcy court was the issue of the dischargeability of the debtor's 1979 and 1980 tax obligations. The debtor there claimed that since the relevant tax years were 1979 and 1980, and the Chapter 7 petition was filed in 1984, the three year collection period for the IRS expired, making the taxes dischargeable. The IRS on the other hand urged that since it was unable to collect the 1979 and 1980 taxes during most of the subsequent three years since the debtor was in Chapter 13 proceedings and protected by the automatic stay, the IRS should be allowed additional time to pursue the debtors.

The *Brickley* court began its analysis with § 108(c) of the Code which provides:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

  (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

  (2) 30 days after notice of the termination or expiration of the stay under section 362, 722, 1201, or 1301 of this title, as the case may be, with respect to such claim.

The *Brickley* court noted that this section extends the statute of limitations for creditors in actions against the debtor. The *Brickley* court also examined Section 6503(b) of the Internal Revenue Code which states:

The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the

control or custody of the court in any proceeding before any court of the United States or any State or of the District of Columbia, and for six months thereafter.

26 U.S.C. § 6503.

The *Brickley* court also examined the Senate Report to § 108(c):

In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for 6 months thereafter (sec. 6503(b) of the Code). The Amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of nondischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in the control or custody of the bankruptcy court. This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.

S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816, 5817.

By examining both these statutory provisions, the *Brickley* court concluded:

Under this section [26 U.S.C. § 6503], the six-year statute of limitations in Section 6502 for the collection of taxes is suspended for any period the taxpayer's assets are in control of the courts and for six months thereafter. *See United States v. Silverman,* 621 F.2d 961, 965 (9th Cir.1980). The issue before this Court is whether Section 108(c) of the Bankruptcy Code, in conjunction with Section 6503(b) of the Internal Revenue Code, tolls the period of tax collection so as to bring the taxes in question within the exception to discharge of Section 523(a)(1) of the Bankruptcy Code.

\* \* \* \* \* \*

... Congress, by enacting Section 108(c), intended to activate Section 6503(b) and thereby suspend the running of the statute of limitations for tax collection during a taxpayer's bankruptcy proceedings. *In re Baird,* 63 B.R. 60, 62–63 (Bkrtcy. W.Ky.1986). Since Congress did not intend to allow a taxpayer to escape liability by the expiration of the statute of limitations while his assets are protected by bankruptcy proceedings, we hold that the tax debts in question are not subject to the discharge granted in this case. *Id.* at 115.

The *Brickley* court further noted:

To follow the Debtors' argument would render the extension of the statute of limitations in Section 108(c) without meaning, since tax collectibility is obviously useless if the tax debt has been discharged. In addition, such a result would open the door to schemes of tax avoidance by debtors who could simply dismiss and refile their case after the expiration of the three-year period of nondischargeability. Since enforcement of the tax laws against delinquent tax debtors takes time, Congress through Section 523, intended to give the taxing authority at least three full years to pursue such debtors. H.Rep. No. 595, 95th Cong. 1st Sess. 190 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Congress did not intend to allow tax avoidance through bankruptcy by permitting the discharge of the debtor before the taxing authority has had a fair opportunity to collect taxes due. *Id.*

70 B.R. at 115–116.

In the case of *In re Molina,* 99 B.R. 792 (S.D.Oh.1988), the debtors filed their first Chapter 13 petition on January 21, 1982. On December 16, 1982 the case was dismissed. The debtors filed their second petition on May 5, 1983. That case was converted to a Chapter 7 liquidation case and the debtors received a discharge on July 19, 1983. On August 26, 1985 the debtors filed their third Chapter 13 petition. A plan was confirmed; however, on motion of the trustee the case was dismissed on October 25, 1985. The third petition was filed 24 days after an Internal Revenue Notice of Levy was issued by the debtor's employer and one day after a Final Decree was sent

to the employer by the Internal Revenue Service.

The debtors' fourth Chapter 13 petition was filed on March 26, 1986. That petition was filed 21 days after an IRS Notice of Levy was issued to the debtor's employer and 6 days after a Notice of Levy was issued to Banc One of Columbus, Ohio. The United States filed a Motion to Dismiss or Convert the Debtor's case on the grounds that it was filed in bad faith and for the sole purpose of frustrating and delaying collection by the United States, or alternatively that the filing of the Chapter 13 peittion tolled the running of the three-year period for determination of tax claim priority status. The bankruptcy court denied the motion. The district court on appeal considered the issue of whether the filing of the Chapter 13 petition tolled the running of the three-year period for determining tax claim priority. In *Molina* the district court noted that the three-year period in § 507(a)(7)(A)(i) paralleled 26 U.S.C. § 6501(a) which provides that a tax is to be assessed within three years after a return is filed and that no proceedings in court until assessment for the collection of such tax shall be begun after the expiration of such period. As that court noted:

> The intent of Congress is made clear in the legislative history of the Bankruptcy Act:
>
> > It is believed that such a [3 year] period will not impose an unrealistic or unfair burden upon the tax authorities in auditing returns and assessing deficiencies. In fact, the period coincides with the 3–year statute of limitations for assessments in Federal income tax cases. The fact that tax claims for the 3 years preceding bankruptcy will not be discharged should serve to discourage recourse to bankruptcy as a facile device for evading tax obligations. At the same time it will become feasible for an industrious debtor to reestablish himself as a productive and taxpaying member of society.

S.Rep. No. 1158, 89th Cong., 2d Sess—*reprinted in* 1966 U.S.Code Cong. & Admin.News 2468, 2470.

It is the debtors' position that the plain language of section 507(a)(7)(A)(i) bars the IRS from obtaining priority status on the 1981 tax liability because their Chapter 13 petition was filed on March 26, 1986, *i.e.*, beyond the three-year period. By contrast, the government argues that because the debtors were engaged in Chapter 13 proceedings from January 21, 1982 until August, 1986, the automatic stay provision of 11 U.S.C. § 362 precluded the government from taking any action to collect the taxes, and this acted to toll section 507(a)(7)(i)'s three-year limitation.

*Id.* at 794.

The *Molina* court further noted:

> As stated earlier, 26 U.S.C. § 6501 provides a three-year statute of limitations for the assessment of taxes. 26 U.S.C. § 6502 provides a six-year statute of limitations for the collection of taxes.[1]  26

---

1. 26 U.S.C. § 6501 "Limitations on assessment and collection" provides in relevant part:

    (a) **General rule.**—Except as otherwise provided. in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
    26 U.S.C. § 6502 "Collection after assessment" provides:

    (a) **Length of period.**—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
    (1) within 6 years after the assessment of the tax, or
    (2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6–year period (or, if there is a release of levy under section 6343 after such 6–year period, then before such release).
    The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collect-

U.S.C. §§ 6503(b) and 6503(i), however, extend both of these time periods in relation to bankruptcy proceedings:

(b) The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.

\*      \*      \*      \*      \*      \*

(i) The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collections shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—

(1) for assessment, 60 days thereafter, and

(2) for collection, 6 months thereafter.

As applied to the present case, the statute therefore has the effect of suspending the running of the limitations period while the taxpayer's assets were in the custody or control of the bankruptcy court and for six months thereafter. *Id.* at 795.

Accordingly, the *Molina* case concluded:

These statutes and their legislative history make clear that Congress did not intend for a taxpayer to be able to escape liability by protecting his assets in a bankruptcy proceeding until the statute of limitations expired. *Brickley*, 70 B.R. at 115.

*Id.*

Accordingly, the *Molina* court held that the filing of a bankruptcy petition suspended the running of the three-year period for determining tax claim priority status pursuant to § 507(a)(7)(A)(i).

ed by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes enforceable.

In *Brickley* and *Molina*, these courts determined that since the collection efforts of the IRS were stayed pursuant to § 362(a), consequently the three-year period under § 507 was tolled pursuant to § 108(c) while the prior petition was pending.

The nature and function of a tax assessment was set forth by the court in the case of *Hartman v. United States of America, Internal Revenue Service, The State of Kansas and Kansas Department of Revenue*, 110 B.R. 951, 955 (D.Kan.1990) which stated:

"An 'assessment' of taxes is a formal, discrete act with specific legal consequences." *In re Heritage Vil. Ch. & Missionary Fellowship*, 87 Bankr. 401, 403 (D.S.C.), *aff'd*, 851 F.2d 104 (4th Cir. 1988). If investigation reveals an amount stated on the return to be deficient, the taxpayer is notified and administrative proceedings are commenced. An assessment is made by the IRS only after the taxpayer is sent a notice of deficiency. *Id.* Within sixty days of the assessment being entered, the IRS sends a notice of assessment and therein demands payment. 26 U.S.C. § 6303. A tax lien on the taxpayer's property arises from the assessment which permits the IRS to levy upon the property of the taxpayer within ten days of the notice and demand. 26 U.S.C. §§ 6322, 6331(a). *See also Matter of Carlson*, 580 F.2d [1365] at 1368 (10th Cir.1978) ]. Simply stated, "a tax assessment, pursuant to 26 U.S.C. § 6201 et seq., is an administrative device, used by the IRS in its collection activities, which serves the function of a court judgment." *In re Carter*, 74 Bankr. 613, 615 (Bankr.E.D.Pa.1987). Congress is presumed to have known this law and to have acted in a manner to harmonize the provisions of the Bankruptcy Code with the existing Internal Revenue Code. *See generally Cannon*

(b) **Date when levy is considered made.**— The date on which a levy on property or rights to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given.

*v. University of Chicago*, 441 U.S. 677, 697–98 [99 S.Ct. 1946, 60 L.Ed.2d 560] (1979).

*Id.* at 955.

In this case, while the assessments were made before the Debtor filed his first petition, as a result of that filing and the attendant stay, the IRS was not given the benefit of 240 days to pursue its post-assessment collection remedies. The attorney for the Debtor argues in his June 12, 1989 Letter Memorandum to the court that § 507(a)(7)(A)(ii) contains its own tolling section, as it provides that the 240–day time period shall be extended for the time period during which an offer in compromise with respect to such assessed taxes was pending, plus an additional 30 days and that accordingly Congress explicitly considered those circumstances under which the 240–day time period should be tolled. Counsel for the Debtor also argues that to give effect to the prior bankruptcy case for purposes of calculating the time period under § 507(a)(7)(A)(ii) would be contrary to the provisions of § 349(a). The court will address both these arguments in turn.

The Senate Report is illuminating on the policy behind the treatment of offers in compromise in the Senate version of § 507(a)(7)(A)(ii):

> Taxes for which an offer in compromise was withdrawn by the debtor, or rejected by a governmental unit, within 240 days before the petition date (§ 507(a)(6)(B)(iii)) will also receive sixth priority. This rule closes a loophole under present law under which, following an assessment of tax, some taxpayers have submitted a formal offer in compromise, dragged out negotiations with the taxing authority until the tax liability would lose priority under the three-year priority period of present law, and then filed in bankruptcy before the governmental unit could take collection steps.

S.Rep. No. 989, 95th Cong., 2d Sess. 71 (1978), U.S.Code Cong. & Admin.News 1978, p. 5857.

The Congressional Record Statement to the final version of § 507(a)(7)(A)(ii) provides:

> If, following assessment of a tax, the debtor submits an offer in compromise to the governmental unit, the House amendment provides that the 240–day period is to be suspended for the duration of the offer and will resume running after the offer is withdrawn or rejected by the governmental unit, but the tax liability will receive priority if the title 11 petition is filed during the balance of the 240–day period or during a minimum of 30 days after the offer is withdrawn or rejected. This rule modifies a provision of the Senate amendment dealing specifically with offers in compromise. Under the modified rule, if, after the assessment, an offer in compromise is submitted by the debtor and is still pending (without having been accepted or rejected) at the date on which a title 11 petition is filed, the underlying liability will receive sixth priority. However, if an assessment of a tax liability is made but the tax is not collected within 240 days, the tax will not receive priority under section 507(a)(6)(A)(i) and the debtor cannot revive a priority for that tax by submitting an offer in compromise.

124 Cong.Rec.H. 11,112 (daily ed. Sept. 28, 1978) S. 17,429 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini).

It is clear from the legislative history of this section that the grant of priority status for the IRS was based upon affording the IRS a certain time period to pursue collection efforts unhampered by restraints such as a pending offer in compromise. This policy is also reflected in § 108(c) of the Bankruptcy Code which extends the statute of limitations on collection of nondischargeable federal tax liabilities. *See In re Brickley, supra.* Nor is the court convinced that to give effect to the prior case in calculating the time period under § 507(a)(7)(A)(ii) is contrary to this legislative history or barred by § 349(a) of the Code.

Section 349(a) provides:

§ 349. **Effect of dismissal.**

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under

this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f) of this title.

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

(C) any lien voided under section 507(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

Subsection (a) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 to include a reference to the provisions of § 109(f), now § 109(g); which section had been added by the 1984 amendments.[2]

The legislative history of § 349(a) provides in relevant part:

Subsection (a) specifies that unless the court for cause orders otherwise, the dismissal of a case is without prejudice. The debtor is not barred from receiving a discharge in a later case of debts that were dischargeable in the case dismissed. Of course, this subsection refers only to pre-discharge dismissals. If the debtor has already received a discharge and it is not revoked, then the debtor would be

barred under section 727(a) from receiving a discharge in a subsequent liquidation case for six years. Dismissal of an involuntary on the merits will generally not give rise to adequate cause so as to bar the debtor from further relief. H.R.Rep. No. 595, 95th Cong., 1st Sess. 337–338 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 48 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5834, 6293–6294.

■ Sections 349 and 507 are both provisions of general applicability in cases under Chapters 7, 11, 12 and 13 of the Bankruptcy Code. See 11 U.S.C. § 103(a). In reconciling these two statutory provisions, this court accepts the tenet of statutory construction which provides that regardless of the inclusiveness of the general language of a statute, it does not apply or prevail in matters specifically dealt with in another part of the same enactment. See Maiatico v. United States, 302 F.2d 880, 886 (D.C. Cir.1962); In re Brown, 329 F.Supp. 422, 425 (S.D.Iowa 1971). Accordingly, the provisions of § 507(a)(7)(A)(ii) should prevail in determining the dischargeability of the debts at issue.

Here the Court is satisfied that the time period of the first bankruptcy case, during which the IRS was stayed from its collection efforts should not be considered in calculating the 240–day period of § 507(a)(7)(A)(ii). Accordingly, the Debtor's income tax obligations for the years 1981, 1982 and 1983, assessed on October 21, 1987 (1981 and 1982) and November 16, 1987 shall be accorded priority status under § 507(a)(7)(A)(ii) and deemed nondischargeable obligations of the Debtor.

■ A second issue raised here concerns the IRS' right to a mutual setoff. In response to the tax liability due to the IRS from the debtor for the tax period ending December 31, 1981, the IRS had retained and setoff an income tax refund in the amount of $775.00 due to the debtor for the tax year 1987. The debtor argues that the

---

**2.** Section 349(a) of the Bankruptcy Reform Act of 1978 provided:

**§ 349. Effect of dismissal.**

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed.

refund was improperly made and retained by the IRS after the filing of the instant case in violation of the automatic stay, and applied to a prepetition claim.

The resolution of the issue in the present case involves an examination of several sections of the Bankruptcy Code. Section 362(a) of the Bankruptcy Code provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

Bankruptcy Code § 542(b) provides in relevant part:

an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

Bankruptcy Code § 553 provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 365(h)(2) or 365(i)(2), of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from

such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

By the express terms of Section 553, the right of setoff is limited by the automatic stay provisions of Section 362. *See United States on Behalf of I.R.S. v. Norton,* 717 F.2d 767, 771 (3d Cir.1983).

In the case of *United States on Behalf of I.R.S. v. Norton,* 717 F.2d 767 (3d Cir. 1983) the Third Circuit discussed at length the interplay of 11 U.S.C. § 553 and 11 U.S.C. § 362. Finding that under applicable Pennsylvania law the retention of a debtor's fund by a creditor provided sufficient evidence of an intent to setoff, the court found that the IRS' retention of a debtors' tax refund and its actions in setting it off against the debtors' pre-petition tax debts violated the automatic stay imposed by Section 362. 717 F.2d at 772–774.

The *Norton* court specifically commented in regard to bank setoffs:

This Court has already prohibited banks from setting off debts against a corporate account during the pendency of a reorganization, unless those banks first request and receive relief from the automatic stay in a bankruptcy court. *In re Penn Central Transportation Co.,* 453 F.2d 520 (3d Cir.1972). Without the automatic stay of setoff rights during reorganization, the Court reasoned, the loss of bank accounts and of accounts receivable would probably prove fatal to many otherwise viable businesses. If a bank could freeze the debtor's account upon the filing of a petition in bankruptcy, the debtor's chances for successful rehabilitation would be substantially diminished.

717 F.2d at 773.

In the instant case it is clear that the action of the IRS in setting off and retaining the income tax refund due to the debtor after the filing of the present case violated the automatic stay of § 362.

Counsel for the IRS at oral argument stated that if a setoff occurred it was because after dismissal of the first case, the IRS had taken "the freeze code" off in regard to this file and when the subsequent 1987 return was filed the refund may have been retained. Counsel for the IRS at that hearing agreed to refund that amount to the Debtor. To the extent that has not been done, it will be ordered turned over within 30 days of the date of this opinion.

An order in conformance with this Opinion shall be submitted.