**In re George ABERL, Lois Aberl, Debtors.**

**George ABERL, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 91–34623.
Adv. No. 91–3542.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Sept. 16, 1993.

Verne Armstrong, Asst. U.S. Atty., Toledo, OH, Henry Riordan, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S.

Eugene Canestraro, Fred Henning, Toledo, OH, for debtors.

## OPINION AND ORDER DETERMINING DEBT TO BE DISCHARGED

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on George and Lois Aberl's (the "Aberls") complaint to determine dischargeability of federal income taxes for tax years 1981 and 1983 under 11 U.S.C. § 523(a)(1)(A). This section excepts from discharge income taxes assessed within 240 days of a bankruptcy petition (the "240 day rule") plus any time during which the 240 day period is tolled by an offer in compromise pursuant to 11 U.S.C. § 507(a)(7)(A)(ii). Upon the evidence adduced at trial, the Court finds that the Aberls' complaint is well taken and

that the Aberls' debt owed to the Internal Revenue Service (the "IRS") for tax years 1981 and 1983 should be discharged.

## FACTS

The Aberls filed a petition under Chapter 7 of title 11 on November 27, 1991 (the "Petition").

Prior to the Petition, the Aberls made a formal written offer in compromise of their prior years' federal tax liability in the amount of $35,000 to the IRS on August 21, 1990 (the "Offer"). *See* Government Exhibit D, Form 656 Offer in Compromise. The IRS assessed the Aberls with deficiencies for the tax years 1981 and 1983 of $26,630.40 and $2,326.46, respectively, on October 19, 1990. On March 12, 1991, the IRS rejected the Offer (the "Rejection"). *See* Government Exhibit E.

The parties agree that the Aberls did not make another written offer in compromise as prescribed by IRS regulations after the Offer. However, the parties differ as to how certain communications between the Aberls' former counsel Alan Mikesell ("Mikesell") and the IRS subsequent to the Rejection should be characterized.

Should the Court accept any of the three arguments advanced by the IRS, the Aberls' income taxes for tax years 1981 and 1983 will represent nondischargeable priority taxes under 11 U.S.C. § 523(a)(1)(A). First, the IRS argues that the Offer tolled the 240 day rule. Second, the IRS argues that a letter written to IRS by Mikesell on June 4, 1991 requesting that the IRS reconsider the Offer (the "Letter") or certain oral negotiations which took place between the IRS and Mikesell at a meeting subsequent to the Letter (the "Negotiations") constituted an offer in compromise which tolled the 240 day rule. Third, the IRS argues that the Negotiations and the Letter represented an appeal which made the previously rejected Offer a pending offer thus tolling the 240 day rule. The calculation of these time periods can be illustrated as follows:

Time after assessment by the IRS on October 19, 1990 and prior to Petition filed November 27, 1991 404 days

Calculation of prepetition period during which taxes assessed were nondischargeable priority taxes if the Offer tolled the 240 day rule:

| | |
|---|---|
| Time after assessment by the IRS on October 19, 1990 and prior to Rejection on March 12, 1991 | 144 days |
| plus 30 days (per IRS interpretation of § 507(a)(7)(A)(ii)) | 30 days |
| plus 240 days (per IRS interpretation of § 507(a)(7)(A)(ii)) | 240 days |
| Total | 414 days |

Calculation of prepetition period during which taxes assessed were nondischargeable priority taxes if the Negotiations or the Letter represented either a "renewed offer" or an "appeal" tolling the 240 day rule:

| | |
|---|---|
| Time after Letter dated June 4, 1991 and prior to Petition filed November 27, 1991 | 176 days |
| plus 30 days (per IRS interpretation of § 507(a)(7)(A)(ii)) | 30 days |
| plus 240 days (per IRS interpretation of § 507(a)(7)(A)(ii)) | 240 days |
| Total | 446 days |

The Letter requested that the IRS reconsider the Offer or a lesser amount in compromise of the Aberls' tax liability in light of Mr. Aberl's (the "Debtor") age, health and financial condition at that time. *See* Government Exhibit F, p. 2. The Letter further referred to certain "significant errors" in the Statement of Ability to Pay

prepared by IRS agents. *See* Government Exhibit F, p. 1–2.

Fred Yellon ("Yellon"), an advisor in the Special Procedures Division of the IRS, testified that the IRS treated the Negotiations and the Letter as an appeal and that the Offer was still under consideration until the date of the Petition.

The Aberls argue that Mikesell did not have their consent to enter into an offer in compromise subsequent to the Rejection. Further, the Aberls argue that the Negotiations and the Letter did not constitute an offer in compromise or an appeal.

George Aberl (the "Debtor") testified that the Aberls did not make an offer in compromise after the Rejection. The Debtor further testified that the Aberls did not appeal the Rejection. The Debtor testified that the Negotiations and the Letter were a response to a letter notifying the Aberls of the Rejection. The Aberls received two letters from the IRS inviting them to contact the IRS if they had any questions regarding the Rejection. *See* Plaintiffs' Exhibits 5 and Government Exhibit E. According to the Debtor, Mikesell told him that though the Offer had been rejected, in Mikesell's opinion the original offer was adequate.

The Debtor testified that he requested that Mikesell contact the IRS to determine whether the IRS would entertain another offer for a lesser amount because of the Debtor's age, health and financial condition. The Debtor also testified that the Aberls did not file a written appeal in response to the letter notifying the Aberls of the proposed Rejection which stated that "[y]ou ... will be provided 15 days to request a written appeal". *See* Plaintiff's Exhibit 5. The Debtor testified that though Mikesell had the Aberls' consent to discuss the Aberls' prior taxes with the IRS, the Debtor was unaware of the letter which Mikesell submitted to the IRS and that Mikesell did not have the Aberls' consent to enter into an offer in compromise with the IRS or to appeal the Rejection.

Additionally, the parties provided testimony as to the effect of an offer in compromise on collection activities by the IRS in general and to collection activities by the IRS in this particular case.

Ronald Zelienski, IRS Group Manager for the Collection Division, and Yellon indicated that while an offer in compromise is pending, the IRS performs collection activities on a "case-by-case basis".

According to the Debtor, the Aberls received no notification from the IRS that collection activities had been suspended while the Offer was pending. The Debtor also stated that he was contacted after the Rejection, in May of 1991, by Steve Biela, a collection representative for the IRS.

Responding to the Aberls' allegations that certain computer codes on their tax transcripts indicated that their income tax liabilities had been abated, Yellon testified that the entries were made in order to prevent automatic collection activities by the IRS during the pendency of the Aberls' bankruptcy case such as offsetting the Aberls' income taxes and levying on the Aberls' bank accounts.

## DISCUSSION
### BURDEN OF PROOF

■ The IRS must prove that the Aberls' tax liability is nondischargeable by the preponderance of the evidence. *Hopkins v. U.S. (In re Hopkins)*, 133 B.R. 102 (Bankr.N.D.Ohio 1991); *e.g. Hatchett v. U.S. (In re Hatchett)*, 1993 WL 360670 (Bankr.E.D.Mich.); *Lewis v. U.S. (In re Lewis)*, 151 B.R. 140 (Bankr.W.D.Tenn. 1992); *cf. Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance of the evidence standard applies to actions to except debt from discharge under 11 U.S.C. § 523(a)).

### COMMUNICATIONS BETWEEN THE PARTIES PRIOR TO THE REJECTION

**The Offer**

APPLICABLE STATUTES:

11 U.S.C. § 523 provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed[.]

11 U.S.C. § 507 provides that:

(a) The following expenses and claims have priority in the following order: ... (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

... (ii) assessed within 240 days, **plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending,** before the date of the filing of the petition[.]

■ At the outset, the Court notes that "[e]xceptions to dischargeability are to be construed strictly". *Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir.1988) (citations omitted).

In deciding whether the taxes assessed against the Aberls are dischargeable in bankruptcy, the Court must first decide whether a formal written offer in compromise made prior to the assessment of taxes by the IRS tolled the running of the 240 day rule while the Offer was pending.

In interpreting 11 U.S.C. § 507(a)(7)(A)(ii), this Court "is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself". *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990) (quoting *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985)). The Court " 'must presume that a legislature says in a statute what it means and means in a statute what it says there' ".

*Hill v. Fidelity Fin. Services (In re Hill)*, 152 B.R. 204, 205 (Bankr.S.D.Ohio 1993) (quoting *Connecticut Nat'l Bank v. Germain*, —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992)). A court will depart from the literal meaning of a statute only where " 'the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' ". *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citation omitted).

■ The 240 day rule under § 507(a)(7)(A)(ii) is tolled where an offer in compromise is "made within 240 days after [an] assessment". The Court is not aware of any cases determining whether an offer in compromise tolled the running of the 240 day rule under 11 U.S.C. § 507(a)(7)(A)(ii) other than an unreported case from the District of Hawaii cited by the IRS. Defendant's Exhibit M, *Cumiford v. Commissioner (In re Cumiford)*, Ch. 7 Case No. 86–00271, Adv. No. 87–0013 (D.Haw. April 14, 1988). In *Cumiford*, the court held that the statute applied to situations, such as the case at bar, where a taxpayer has made an offer in compromise prior to the assessment of taxes by the IRS. This Court does not concur with the *Cumiford* court that the tolling provision in § 507(a)(7)(A)(ii) for offers in compromise "made within 240 days after the assessment" applies to offers in compromise made before the assessment of taxes by the IRS. This Court believes that Congress " 'sa[id] in [this] statute what it mean[t] and mean[t] what it sa[id]' ". *Hill*, 152 B.R. at 205. The Court cannot conclude that when Congress said "within 240 days after" it meant "before". The reading of the statute urged by the IRS and adopted by the *Cumiford* court would render the words "after such assessment" superfluous in " 'violat[ion] [of] the established principle that a court should give effect, if possible to every clause and word of a statute' ". *Moskal v. U.S.*, 498 U.S. 103, 109–10, 111 S.Ct. 461, 465–66, 112 L.Ed.2d 449 (1990) (citation omitted). The 240 day rule is expanded where, after an assessment of taxes by the IRS, a taxpayer

makes an offer in compromise within 240 days. Had Congress intended § 507(a)(7)(A)(ii) to apply to situations where an offer in compromise was made by a taxpayer prior to assessment by the IRS, Congress would have said this in the statute. Moreover, construing § 507(a)(7)(A)(ii) as only applicable to situations where an offer in compromise follows the assessment of taxes by the IRS is consistent with the Sixth Circuit's admonition that "[e]xceptions to dischargeability are to be construed strictly". *Manufacturer's Hanover Trust Co.*, 857 F.2d at 1083.

Further, this Court cannot conclude that "the literal application of [the] statute will produce a result demonstrably at odds with the intentions of its drafters". *Ron Pair*, 489 U.S. at 242, 109 S.Ct. at 1031. The legislative history cited by the *Cumiford* court shows that interpreting the statute as inapplicable to situations where an offer in compromise is made prior to the assessment of taxes by the IRS is not "demonstrably at odds with the intentions of its drafters". *Ron Pair*, 489 U.S. at 242, 109 S.Ct. at 1031. To the contrary, such an interpretation appears consistent with the intentions of the drafters.

The Senate Report cited in *Cumiford* states that:

> Taxes for which an offer in compromise was withdrawn by the debtor, or rejected by a governmental unit, within 240 days before the petition date 507(a)[ (7) ][ (A) ][ (ii) ] will also receive [seventh] priority. This rule closes a loophole under present law under which, *following an assessment of tax,* some taxpayers have submitted a formal offer in compromise, dragged out negotiations with the taxing authority until the tax liability would lose priority under the three-year priority period of present law, and then filed in bankruptcy before the governmental unit could take collection steps.

*Cumiford,* at p. 5 (quoting Sen.Rep. No. 989, 95th Cong., 2d Sess. 71, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5857).

The final version of the Congressional Record Statement for 11 U.S.C. § 507(a)(7)(A)(ii) also evinces an intent to toll the 240 day rule only in the situation where an offer in compromise follows the assessment of taxes in stating that:

> If, *following assessment of a tax,* the debtor submits an
>
> offer in compromise to the governmental unit, the House amendment provides that the 240-day period is to be suspended for the duration of the offer and will resume running after the offer is withdrawn or rejected by the governmental unit, but the tax liability will receive priority if the title 11 petition is filed during balance of the 240-day period or during a minimum of 30 days after the offer is withdrawn or rejected. This rule modifies a provision of the Senate amendment dealing specifically with offers in compromise. Under the modified rule, if, *after the assessment,* an offer in compromise is submitted by the debtor and is still pending (without having been accepted or rejected) at the date on which a title 11 petition is filed, the underlying liability will receive [seventh] priority. However, if an assessment of a tax liability is made but the tax is not collected within 240 days, the tax will not receive priority under section 507(a)[ (7) ](A)(ii).

124 Cong.Rec.H. 11, 112 (daily ed. Sept. 28, 1978) S. 17,429 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini) (quoted in *In re Davidson,* 120 B.R. 777, 786 (Bankr.D.N.J.1990)). The legislative history for § 507(a)(7)(A)(ii) deals solely with the situation where a debtor makes an offer in compromise after the IRS has assessed taxes. Thus, the above legislative history indicates that construing the statute as only applicable to situations where a debtor made an offer in compromise after the IRS has previously assessed taxes is consistent with the intention of the drafters.

The *Cumiford* court also found a general "legislative purpose ... to prevent a well-timed offer in compromise from stripping an assessment of the otherwise priority status it would be accorded". *Cumi-*

*ford*, p. 5. Adopting the *Cumiford* court's interpretation of § 507(a)(7)(A)(ii) would necessarily expand the IRS's ability to collect taxes. However, this Court cannot rewrite § 507(a)(7)(A)(ii) to grant the IRS broader protection than that provided by Congress. Congress has granted the IRS a 240 day prepetition period in which to collect taxes. This period is expanded where, after an assessment of taxes by the IRS, a taxpayer makes an offer in compromise within 240 days. Taxes assessed by the IRS, after an offer in compromise is pending, receive priority under 11 U.S.C. § 507(a)(7)(A)(ii) if they are "assessed within 240 days ... before the date of the filing of the petition". The statute does not provide for expansion of the 240 day period where a taxpayer makes an offer in compromise prior to the assessment of taxes by the IRS. Here, as in *Iselin v. U.S.*, "[w]hat the government asks is not a construction of the statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function". *Iselin v. U.S.*, 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926) (citations omitted).

■ Even if the Court was persuaded by the argument that the reach of § 507(a)(7)(ii) could be enlarged based on an unarticulated general "legislative purpose", the Court is not convinced that such an enlargement would be wise. Although the IRS has argued that collection activities are halted when an offer in compromise has been submitted, both Zelienski and Yellon testified that the IRS's decision on whether to suspend collection activities after an offer in compromise has been submitted is made by IRS collection officials on a "case-by-case basis". In addition, Treasury Regulation § 301.7122-1 provides that "[t]he submission of an offer in compromise shall not automatically operate to stay the collection of any tax liability". 26 C.F.R. § 301.7122-1(d)(2). Thus, the IRS has not convinced the Court that an offer in compromise submitted prior to the assessment of taxes by the IRS circumscribes the IRS's ability to collect the taxes which have been assessed.

The taxes assessed by the IRS against the Aberls for the 1981 and 1983 tax years were assessed more than 240 days before the date of the filing of the Petition and, thus, are not entitled to priority under § 507(a)(7)(A)(ii). Therefore, these taxes are not excepted from discharge under 11 U.S.C. § 523(a)(1)(A).

## COMMUNICATIONS BETWEEN THE PARTIES SUBSEQUENT TO THE REJECTION

26 C.F.R. § 301.7122-1 Compromises.

... (d) Procedure with respect to offers in compromise.—

(1) Submission of offers. **Offers in compromise shall be submitted on forms prescribed by the Internal Revenue Service** which may be obtained from district directors of Internal Revenue, and should generally be accompanied by a remittance representing the amount of the compromise offer or a deposit ...

(2) Stay of collection. The submission of an offer in compromise shall not automatically operate to stay the collection of any tax liability. However, enforcement of collection may be deferred if the interests of the United States shall not be jeopardized thereby.

(3) Acceptance. An offer in compromise shall be considered accepted only when the proponent thereof is so notified in writing ...

(4) Withdrawal or rejection.... In the event an offer is rejected, the proponent shall be promptly notified in writing. Frivolous offers or offers submitted for the purpose of delaying the collection of tax liabilities shall be immediately rejected. If an offer in compromise is withdrawn or rejected, the amount tendered with the offer ... shall be refunded without interest.

... (f) Requirement with respect to statute of limitations. No offer of compro-

mise shall be accepted unless the taxpayer waives the running of the statutory period of limitations on both or either assessment or collection of the tax liability involved for the period during which the offer is pending[.]

Neither the Letter nor the Negotiations were effective to toll the running of the 240 day rule under § 507(a)(7)(A)(ii). Therefore, neither the Letter nor the Negotiations rendered assessments against the Aberls for the tax years 1981 and 1983 nondischargeable under § 523(a)(1)(A).

■ Since neither the Letter nor the Negotiations were effective as an "offer in compromise" under 26 C.F.R. § 301.7122–1, they did not represent an "offer in compromise" within the meaning of 11 U.S.C. § 507(a)(7)(A)(ii). In defining a technical term, this Court "assume[s] that when a statute uses such a term, Congress intended it to have its established meaning". *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 342, 111 S.Ct. 807, 810, 112 L.Ed.2d 866 (1991) (citations omitted); *See also Blank v. U.S. (In re Blank),* 137 B.R. 671 (Bankr.N.D.Ohio 1992) ("assess" has the same meaning for purposes of 11 U.S.C. § 507(a)(7)(A)(ii) that it does in the Internal Revenue Code and regulations). Therefore, this Court finds that "offer in compromise" has the same meaning under 11 U.S.C. § 507(a)(7)(A)(ii) that it has under the Internal Revenue Code and regulations.

### The Negotiations

■ This Court agrees with the court in *Boulez v. Commissioner* that "[Treas.Reg. § 301.7122–1(d)], which requires that all compromises be reduced to writing, has the force and effect of law, and that the [IRS] lacked authority to waive it". *Boulez v. Commissioner,* 810 F.2d 209, 211 (D.C.Cir.), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987); *cf. Cottage Sav. Ass'n. v. Commissioner,* 499 U.S. 554, 561, 111 S.Ct. 1503, 1508, 113 L.Ed.2d 589 (1991) (" 'Treasury Regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received Congressional approval and have the effect of law.' ") (citations omitted). Treasury Regulation § 301.7122–1(d) further requires the offer in compromise to be "on forms prescribed by the Internal Revenue Service". *See* 26 C.F.R. § 301.7122–1(d). In *Boulez,* the court accepted the IRS's argument that an oral agreement between a taxpayer and the IRS's Director of International Operations was ineffective as an offer in compromise because the agreement did not comply with Treasury Regulation § 301.7122–1(d). The court observed that "the writing requirement of Treasury Regulation § 301.7122–1(d) confers rights and imposes liabilities on third parties—as [the taxpayer] would be the first to insist if tables were turned and the IRS invoked an oral compromise agreement against him". *Boulez,* 810 F.2d at 215 (footnote omitted). Treasury Regulation § 301.7122–1(d) mandates that an offer in compromise be submitted in writing on forms supplied by the IRS. Thus, the Negotiations did not constitute an offer in compromise which tolled the running of the 240 day rule.

The Supreme Court stated in *Grogan* that "[t]he statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts—such as child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud". *Grogan,* 498 U.S. at 286, 111 S.Ct. at 659. Congress was aware of regulations prescribing procedures for offers in compromise. Had Congress intended to toll the 240 day rule for oral "offers in compromise" Congress would have indicated this in the statute.

■ Even if the Court construed the language of § 507(a)(7)(A)(ii) as tolling the running of the 240 day rule for oral "offers in compromise", the IRS has not provided proof of statements made during the Negotiations which could be construed as such an offer in compromise. Indeed, the IRS has given the Court no indication as to what statements were made by either the IRS representative or Mikesell during the Negotiations. Further, other than the Debtor's statement that the Negotiations

took place after the Letter, there is no evidence before the Court as to the date of the Negotiations.

Lastly, the Court notes that the parties have not cited applicable case law or regulations to assist the Court in determining what constitutes an offer in compromise or when such an offer is considered pending. "This [C]ourt is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case." *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir.1990). The Court further notes that "it is the duty of attorneys preparing cases for this [C]ourt to examine carefully the law and apply it in a cogent fashion to the facts of the case". *Smith v. Town of Eaton*, 910 F.2d 1469, 1470 (7th Cir.1990).

**The Letter**

 The Letter did not represent an offer in compromise which tolled the running of the 240 day rule under § 507(a)(7)(A)(ii). In addition to requiring that offers in compromise be in written form, applicable Treasury Regulations require that such offers be "submitted on forms prescribed by the Internal Revenue Service". 26 C.F.R. § 301.7122–1(d)(1). *See Center Art Galleries–Hawaii, Inc. v. U.S.*, unreported, Civ. No. 92–00756, 1993 WL 293695 (D.Haw. May 19, 1993) (citing *Laurins v. Commissioner*, 889 F.2d 910, 912 (9th Cir.1989), and *Shumaker v. Commissioner*, 648 F.2d 1198, 1199–1200 (9th Cir.1981), in holding that letter from taxpayer's counsel fixing remaining tax liability which was countersigned by IRS did not constitute an offer in compromise because letter was not contained on prescribed IRS forms mandated by 26 C.F.R. § 301.7122–1(d)(1) and the IRS did not accept the purported compromise letter in writing); *Hearne v. U.S.*, unreported, No. 92–CA–090 SS, 1993 WL 266945 (W.D.Tex.1993) (holding that purported compromise agreement prepared by IRS on "examination report" of IRS agent which was signed by taxpayer did not constitute an offer in compromise binding on the IRS because the purported compromise agreement was not submitted on forms prescribed by IRS, tax-

payer did not receive written confirmation from IRS and IRS agent did not have authority to bind IRS); *See also Laurins v. Commissioner*, 889 F.2d 910, 912 (9th Cir. 1989) (holding that writing on the back of a check submitted by the taxpayer to the IRS which read "full accord and satisfaction of 1977 and all prior years" did not represent an offer in compromise because "an offer in compromise must be submitted on special forms prescribed by the Secretary, and an offer will not be considered tŏ have been accepted until and unless the taxpayer is notified in writing of the acceptance") (citations omitted); *Klein v. Commissioner*, 899 F.2d 1149, 1152–53 (11th Cir.1990) (stating that "[t]he requirements set forth in [statutes governing settlement agreements and offers in compromise] and the accompanying regulations are exclusive and strictly construed" in holding that "discussion[s] [of] possible settlement" coupled with letters from IRS to taxpayer discussing settlement did not constitute a binding settlement agreement); *Shumaker v. Commissioner*, 648 F.2d 1198, 1200 (9th Cir. 1981) (stating that the regulations which establish procedures for closing agreements and compromises "are exclusive" in holding that "[n]either the informal acceptance of [taxpayer's] amended returns nor the adjustments to his tax crediting him with the amount in controversy constituted a binding agreement under the tax laws") (citations omitted); *Combs v. U.S.*, 790 F.Supp. 850 (S.D.Ind.1992) (stating that "[w]hether a settlement agreement between a taxpayer and the IRS is in itself binding depends upon whether the agreement is 'formal' or 'informal' " and that "IRS regulations establishing procedures for closing agreements and compromises are the exclusive means of settling tax disputes" in holding that closing agreement which was not contained on form mandated by IRS regulations was not binding against taxpayer). This regulation is not a "mere housekeeping provision, but a fundamental tenet of formalizing agreements". *Boulez*, 810 F.2d at 215.

In an analogous context, the Supreme Court has held that an "informal settlement [agreement] ... did not constitute a

binding agreement". *Botany Worsted Mills v. U.S.*, 278 U.S. 282, 288, 49 S.Ct. 129, 131, 73 L.Ed. 379 (1929). *Botany Worsted Mills* represented a case where:

> [a]fter much correspondence and numerous conferences extending over several months between the attorney and assistant treasurer of the [taxpayer] and the chief of special audit section of the Bureau of Internal Revenue and others of his official associates, a compromise was agreed to as to all the differences, by which the amount to be allowed as a [deduction for] reasonable compensation to the directors and as depreciation were agreed upon, and the claim [for a deduction] as to reserves was allowed.

*Botany Worsted Mills*, 278 U.S. at 286, 49 S.Ct. at 130. The Court opined that the "gentleman's agreement" had no legal effect because it did not comply with the applicable statute which required the concurrence of the Commissioner of the IRS and the Secretary of the Treasury and further required that the compromise agreement be kept on file in the office of the Commissioner of the IRS. *Botany Worsted Mills*, 278 U.S. at 282, 49 S.Ct. at 129. *See also Sampson v. Commissioner*, 444 F.2d 530 (6th Cir.1971) (per curiam) (holding that informal agreement reached in meeting between taxpayer and representative of Appellate Division of the IRS in attempt to settle tax liability had no legal effect) (citations omitted); *Joyce v. Gentsch*, 141 F.2d 891 (6th Cir.1944) (holding that taxpayer was not precluded by an informal agreement from recovering any portion of the tax paid where the agreement did not comply with statutory requirements for a formal offer in compromise or closing agreement); *c.f. Brooks v. U.S.*, 833 F.2d 1136, 1145 (4th Cir.1987) (noting that "[t]he requirements of [statutes governing settlement agreements and offers in compromise] and accompanying regulations are strictly construed") (citations omitted). In the instant proceeding, the failure of the IRS to comply with the requirements of 26 C.F.R. § 301.7122–1(d) compels this Court to hold that the Letter did not constitute an offer in compromise.

Congress knew that applicable laws and regulations, and cases interpreting these laws and regulations, required a formal offer in compromise contained on IRS forms when it drafted § 507(a)(7)(A)(ii). Had Congress intended to toll the 240 day rule for written "offers in compromise" which did not comply with IRS regulations, Congress would have said so in the statute.

Moreover, construing 11 U.S.C. § 507(a)(7)(A)(ii) as applicable to oral "offers in compromise" would be "demonstrably at odds with the intentions of its drafters". The Congressional Record Statement for 11 U.S.C. § 507(a)(7)(A)(ii) indicates that Congress intended to toll the running of the 240 day rule for offers in compromise which are "pending (without having been ... rejected)" Congressional Record Statement for 11 U.S.C. § 507(a)(7)(A)(ii) (quoted in *In re Davidson*, 120 B.R. at 786). This legislative history also states that the "240–day period ... will resume running after the offer is withdrawn or rejected". Congressional Record Statement for 11 U.S.C. § 507(a)(7)(A)(ii) (quoted in *In re Davidson*, 120 B.R. at 786). To construe the statute as applicable to the Letter, which followed the formal Rejection, would frustrate the intent of the drafters.

Furthermore, the Court is convinced that the Letter represented nothing more than a request that the IRS determine the amount which would represent an acceptable compromise. The actions taken by the Aberls and Mikesell are consistent with the testimony of the Debtor that the Aberls were responding to the letters informing them of the Rejection. These letters invited the Aberls to contact the IRS with questions regarding the Rejection. The IRS stamped the Offer as "rejected", apparently refunded the amount tendered with the Offer, as the IRS is ordinarily required to do in compliance with Treasury Regulation § 301.7122–1(d)(4), and commenced collection activities against the Aberls. *See* Government Exhibit D, Form 656 Offer in Compromise. These facts are inconsistent with the IRS's position that the subsequent Letter constituted an offer in compromise.

 Additionally, the fact that the Letter did not contain a waiver of the statute of limitations on either assessment or collection of the Aberls' taxes as required by Treasury Regulation § 301.7122–1(f) indicates that the Letter was not an offer in compromise. The IRS cannot accept an offer in compromise without such a waiver. Therefore, on the facts presented, the Court cannot construe the Letter as a pending offer in compromise which tolled the running of the 240 day rule.

**The "Appeal"**

 The IRS argued at trial that the Court should construe the Negotiations and the Letter as an "appeal" of the Rejection which transformed the previously rejected Offer into a "pending" offer, thus tolling the 240 day rule. The IRS offered no authority at trial or in its' pretrial brief for the proposition that an "appeal" can transform an offer in compromise which was formally rejected by the IRS into a "pending" offer. Further, the IRS offered scant information as to how the IRS's internal appeal procedures function. In reviewing the cases dealing with offers in compromise, the Court was similarly unable to find any support for this proposition. The cases analyzing offers in compromise indicate that a pending offer in compromise terminates when the IRS formally rejects an offer in compromise. *See U.S. v. McGee*, 993 F.2d 184 (9th Cir.1993) (held that offer in compromise was pending until terminated, withdrawn or formally rejected in dismissing taxpayer's argument that offer in compromise was impliedly rejected by government's abandoning serious consideration of the offer or by government's mailing notice of proposed rejection); *U.S. v. Holloway*, 798 F.2d 175, 176 (6th Cir. 1986) (held that offer in compromise was pending from date offer in compromise was submitted until offer was terminated, withdrawn or formally rejected and offer was not impliedly rejected by IRS's reference of matter to Department of Justice for possible criminal proceedings).

The statute makes no mention of tolling the 240 day rule for "appeals" of offers in compromise which have been previously rejected. "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Taylor v. Brighton Corp.*, 616 F.2d 256, 262 (6th Cir.1980). Therefore, the Court can only interpret the absence of the word "appeal" in the statute as indicating that Congress did not wish to toll the 240 day rule for situations where taxpayers "appealed" previously rejected offers in compromise.

 Even if an "appeal" could serve to toll the running of the 240 day rule, the Court is not convinced that the Aberls did, in fact, appeal the Rejection. The Aberls were notified of their right to a written appeal within 15 days of the proposed rejection of the Offer in a letter from the IRS. *See* Plaintiff's Exhibit 5. In the same letter, the IRS representative informed the Aberls that "[i]f you have any questions, please feel free to contact me". In a subsequent letter informing the Aberls of the Rejection, the IRS notified the Aberls that "[i]f you have any questions regarding the offer, you may contact the person whose name and telephone number appear in the heading of this letter". *See* Plaintiff's Exhibit 4. The IRS acknowledges that the Aberls did not avail themselves of the opportunity for a written appeal. In addition, the actions taken by the Aberls and Mikesell are consistent with the testimony of the Debtor that the Aberls were responding to the letters from the IRS inviting them to contact the IRS with questions regarding the Rejection. The IRS stamped the Offer as "rejected", apparently returned the amount tendered with the Offer, and commenced collection activities against the Aberls. These facts are inconsistent with the IRS's argument that the Aberls "appealed" the Rejection. Thus, the facts do not support a finding that the Aberls' actions constituted an appeal.

**ALLEGED ABATEMENT OF TAXES**

 The Aberls' argument that their taxes were abated because of certain en-

tries on their tax transcripts is spurious. Yellon provided credible testimony that such entries are necessary to prevent collection activities by the IRS after a debtor has filed a bankruptcy petition. *See* 26 C.F.R. § 301.6871(a)–2 ("During a proceeding under the Bankruptcy Act ... the collection of taxes cannot be made by levying upon [estate] assets.") Further, Yellon's testimony has convinced the Court that the Aberls' tax liability was not, in fact, abated.

## CONCLUSION

In conclusion, an offer in compromise made prior to the assessment of taxes by the IRS does not toll the running of 11 U.S.C. § 507(a)(7)(A)(ii). Thus, the Aberls' tax liabilities for the tax years 1981 and 1983 are not excepted from discharge under 11 U.S.C. § 523(a)(1)(A). Further, the communications between the Aberls and the IRS subsequent to the Rejection, which did not comply with Treasury Regulation 26 C.F.R. § 301.7122–1, did not represent an offer in compromise which tolled the running of the 240 day rule under 11 U.S.C. § 507(a)(7)(A)(ii). Therefore, the communications between the Aberls and the IRS subsequent to the Rejection did not expand the 240 day rule and render the Aberls' tax liabilities for the tax years 1981 and 1983 nondischargeable under 11 U.S.C. § 523(a)(1)(A). Lastly, the purported appeal of the Offer did not expand the 240 day rule and render the Aberls' tax liabilities for the tax years 1981 and 1983 nondischargeable under 11 U.S.C. § 523(a)(1)(A).

In light of the foregoing, it is therefore

ORDERED that the Aberls' debt owed to the Internal Revenue Service for tax years 1981 and 1983 be, and hereby is, discharged.