**In re Michael EMERSON, Diane Emerson, Debtors.**

**Michael EMERSON, Diane Emerson, Plaintiffs,**

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 96BK–20981.**
**Adversary No. 97AP–2008.**

United States Bankruptcy Court,
W.D. Louisiana,
Lake Charles Division.

Aug. 22, 1998.

David J. Williams, Lake Charles, LA, for Plaintiffs.

Thomas B. Thompson Lafayette, LA, for Defendant.

Neal I. Fowler, Washington, DC, for Department of Justice.

## REASONS FOR DECISION

HENLEY A. HUNTER, Chief Judge.

This matter came before the Court on the Plaintiff's Motion for Summary Judgment, which requests that certain past due income taxes be declared discharged in a prior bankruptcy case. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local Civil Rule 83.4 incorporated into W.D.La. LBR 9029–3. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion.

This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons there will be judgment in favor of the plaintiffs against the defendant.

## FACTUAL BACKGROUND

This adversary proceeding was filed by the Debtors on February 25, 1997, seeking a declaration that their personal income taxes due for the years 1984, 1985, and 1986 were discharged in a prior bankruptcy proceeding. The instant bankruptcy case is one under Chapter 13. The debtors assert that their prior Chapter 7 case, 94BK–20221, discharged the tax liability. The Chapter 7 case was filed on April 20, 1994, and a discharge order was entered on July 28, 1994.

The Debtors filed their tax returns for the years 1984, 1985, and 1986 in March, of 1991. These taxes were assessed on May 27, June 3, and July 5 of 1991, respectively, totaling $15,150.82. On October 31, 1991, the Debtors made an offer in compromise of these obligations in the amount of $6,615.00. On May 18, 1992, the Debtors filed an "amended" offer in compromise in the amount of $6,544.16. On August 23, 1993, the IRS rejected the Debtor's offer in compromise in the amount of $6,615.61. On September 17, 1993, the Debtors appealed this rejection, stating that they were appealing the offer dated May 18, 1992. On February 17, 1994, an appeals officer for the Service sent a letter rejecting the debtor's offer in compromise, and stated that an "official" rejection letter would be arriving shortly. This official letter, from the Appeals Office of the IRS, was mailed March 24, 1994.

## APPLICABLE LAW

The dischargeability of these income taxes is governed by 11 U.S.C. § 523(a)(1), which states that taxes under 11 U.S.C. § 507(a)(8) are nondischargeable. § 507(a)(8) provides:

"a tax on or measured by income or gross receipts—

(I) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three

years before the date of the filing of the petition;

\* \* \*

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition ..."

The parties agree that this section is applicable to the case at bar. In order to determine the dischargeability of these taxes, the Court must determine the date before which taxes assessed are dischargeable. This date is determinable by a formula set out in *In re Callahan*, 168 B.R. 272, 273 (Bkrtcy.D.Mass. 1993):

"The Court need only determine whether the tax was assessed within (x) days before the Debtor filed his petition in bankruptcy, where (x) is the sum of 240, 30 and any time during which a qualifying offer in compromise was pending."

## DISCUSSION

The key factual issue is the time of rejection of the offer in compromise by the IRS, the rest being arithmetic. The IRS argues that the rejection letters of February and/or March of 1994 set the date of rejection for purposes of § 507(a)(8). The Service claims that, at best, an issue of fact remains as to which letters rejected the offer. The Debtor argues that the "amended" offer could not be used by the IRS under § 507, as this offer was not made during the 240 days after assessment. See *Callahan*, at 273, which held that second offers in compromise not made within the 240 period are not qualifying offers under § 507(a)(8). Therefore, according to the Debtor, the first offer was rejected in August of 1993 and the taxes are therefore dischargeable.

The Service maintains that the amended offer relates back to the initial offer, citing *Waller v. U.S.*, 767 F.Supp. 1042 (E.D.Cal. 1991). Further, the Service maintains that the "amended" offer was not rejected until February or March of 1994, and the taxes are therefore nondischargeable.

This Court finds that the Debtor's qualifying offer in compromise was rejected by the IRS in August of 1993. There are alternative legal theories which support this conclusion. First, Debtor correctly notes that the amended offer was not made within the 240 period, and, therefore should not extend the period. If the "amended" offer constitutes a separate offer with the concomitant separate rejection(s), then *Callahan* supports the Debtor's conclusions. Secondly, the offer, whether amended or not, was rejected on August of 1993, notwithstanding the later rejection letters from IRS appeals officers.

The case of *In re Aberl*, 159 B.R. 792 (Bkrtcy.N.D.Ohio 1993), affirmed 175 B.R. 915, affirmed 78 F.3d 241, held that an appeal of a rejected offer in compromise does not give the offer "pending" status for purposes of § 507. The court stated:

"The statute makes no mention of tolling the 240 day rule for "appeals" of offers in compromise which have been previously rejected. '[I]t is an elemental cannon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' Therefore, the Court can only interpret the absence of the word 'appeal' in the statute as indicating that Congress did not wish to toll the 240 day rule for situations where taxpayers 'appealed' previously rejected offers in compromise." 159 B.R. at 802.

Once a qualifying offer is rejected under § 507(a)(8), the dischargeability period is set, and an appeal cannot revive a rejected offer. *In re Klein*, 1994 WL 741214, *5, (Bkrtcy. C.D.Cal.).

Finally, if the IRS is correct, and the "amended" offer relates back to the original offer in compromise, then both offers were rejected in August of 1993. Thereafter, the offer was appealed. The later rejection letters came from appeals officers of the Service. As stated in *Aberl* and *Klein*, appealed offers are not pending for purposes of § 507(a)(8).

This Court therefore finds, as a matter of law, that a qualifying offer in compromise

was pending under § 507(a)(8) from October 31, 1991 to August 23, 1993. The offer was pending for 663 days, as 1992 was a leap year. Using the *Callahan* formula, 240 plus 30 plus 663, the taxes would have to be assessed within 933 days prior to filing. As the Chapter 7 case was filed on April 20, 1994, the taxes assessed prior to September 30, 1991 are dischargeable. The taxes in this case were assessed from May to July of 1991. Therefore, the taxes were discharged.

This Court cannot find a factual scenario under which the Service can prevail, as a matter of law. Therefore, summary judgment in favor of the Debtor is proper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## CONCLUSION

For the foregoing reasons, there will be judgment in favor of the Debtors declaring the taxes owed by the Debtors for the tax years 1984, 1985, and 1986, and interest and penalties thereon, were discharged under Chapter 7 of the Bankruptcy Code on July 28, 1994.

A separate conforming order shall enter.

**SO ORDERED.**