**In re Alfred J. ROMAGNOLO, Debtor.**

**United States of America, Appellant,**

**v.**

**Alfred J. Romagnolo, Appellee.**

**No. 8:96–CV–1089–T–25.**

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 28, 2001.

64

Philip Doyle, U.S. Dept. of Justice, Tax Division, Washington, DC, for appellant.

R. Wade Wetherington, R. Wade Wetherington, P.A., Tampa, FL, for appellee.

**ORDER**

ADAMS, District Judge.

■ **THIS CAUSE** is before the Court on appeal from final judgment of the Bankruptcy court. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). The issue on appeal is whether the bankruptcy court erred as a matter of law when it determined that the debtor's federal income tax liabilities for the years 1982 through 1985 were not priority taxes as described by 11 U.S.C. § 507(a)(8)(A)(ii), and thus were not excepted from discharge under 11 U.S.C. § 523(a)(1)(A). There being no dispute of fact, this Court reviews the bankruptcy court's decision *de novo.*

*In re Englander,* 95 F.3d 1028, 1030 (11th Cir.1996).

## I. FACTS

This case arises from an adversary proceeding in bankruptcy court and concerns Appellee's federal income tax liabilities for 1982 through 1985. Federal income tax liabilities for 1982 through 1984 were assessed against Appellee on August 24, 1992, and for 1985 on August 31, 1992. On March 26, 1993, Appellee submitted to the Internal Revenue Service ("IRS") on Form 656 an "offer in compromise" for the years 1982 through 1985, 1989, and 1992. A revenue officer accepted and signed the "offer in compromise" on March 26, 1993. On April 21, 1993, after discovering that the March 26th offer involved different taxpayers,[1] the revenue officer notified Appellee by letter (and Appellee's CPA, Manuel Junco, by phone) that the March 26, 1993 "offer in compromise" was not processable and demanded that Appellee pay the 1992 tax and interest due by May 7, 1993, in order to avoid a potential distraint action on the condominium owned by Romagnolo's second wife. Appellee amended the "offer in compromise" two days later, on April 23, 1993, by deleting the 1992 and 1989 tax years and by altering the amount of the offer from $15,000.00 to $8,000.00.[2]

The amended offer was rejected on May 3, 1993. Appellee appealed the rejection, and withdrew his appeal on September 3, 1993. Thereafter, on October 19, 1993, Appellee filed a voluntary petition for relief under Chapter 7 and scheduled the Government as an unsecured creditor with a claim of $193,140.06, representing unpaid taxes for the years of 1982 up to and including 1985.

Below, the parties filed cross motions for summary judgment. The bankruptcy court granted summary judgment in Appellee's favor and denied Appellant's motion for summary judgment, finding that the taxes for these years were not priority taxes under § 507(a)(8)(A)(ii) and thus were not excepted from discharge under § 523(a)(1)(A). Final Judgment was entered April 15, 1996. Appellant timely filed this appeal on April 25, 1996.

## II. LEGAL ANALYSIS

The issue on appeal is whether the bankruptcy court erred in finding that the taxes for the years 1982 up to and including 1985 were not priority taxes under § 507(a)(8)(A)(ii) and thus were not excepted from discharge under § 523(a)(1)(A).[3] The bankruptcy court's decision appears to be based on equitable

---

1. The liabilities for 1982 through 1985 were joint liabilities of Appellee and his deceased first wife, Maureen A. Romagnolo, the 1989 liabilities were solely Appellee's, and the 1992 liabilities were joint liabilities of Appellee and his second wife, Suzette.

2. The offer was actually amended by Junco, acting on behalf of Appellee.

3. Section 523(a)(1)(A) of the Bankruptcy Code provides that a tax is not dischargeable for the periods specified in section 507(a)(8). Section 507(a)(8)(A)(ii) of the Bankruptcy Code provides:
   (a) The following expenses and claims have priority in the following order . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts . . .
(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition. . . .
Accordingly, when an offer in compromise is submitted within 240 days of assessment, the 240 day period is extended 30 days plus any time during which the offer-in-compromise was pending.

estoppel principles. However, implicit in its order is a finding that the "offer in compromise" was not pending until April 23, 1993, when the offer was amended. The Court shall address the latter issue first.

Appellee urges here and below that his "offer in compromise" was not "pending" until April 23, 1993. Appellee's reasoning is that his March 26, 1993 offer was not processable, and as such the revenue officer was not *authorized* under the provisions of the Internal Revenue Manual ("IRM") to accept Appellee's waiver of the statute of limitations in the March offer. As explained below, the IRS's acceptance of the taxpayer's waiver of the statute of limitations is, by the terms of the offer and the provisions of the IRM, the point at which an offer is deemed pending. Appellant disputes the legal merits of this argument, but does concede that if the Court finds that the offer was not pending until April 23, 1993, then the tax liabilities for the years 1982–1985 are dischargeable, nonpriority liabilities. Both parties agree that if Appellee's "offer in compromise" for the years 1982 through 1985 is found to have been pending on March 26, 1993, then the taxes for these years are excepted from discharge in bankruptcy.

The bankruptcy code does not define when an "offer in compromise" is "pending" for purposes of applying section 507(a)(8)(A)(ii). However, paragraph 8 on Form 656 provides:

> The offer shall be deemed pending from the date an authorized official of the Internal Revenue Service accepts taxpayer-proponent's waiver of the statutory periods of limitation and shall remain pending until an authorized official of

the Internal Revenue Service formally, in writing, accepts, rejects or withdraws the offer. If there is an appeal with respect to the offer, the offer shall be deemed pending until the date the Appeals office formally accepts or rejects the offer in writing.

Form 656 (emphasis added).[4] This language is derived from the IRM which provides that an "offer in compromise" is "pending from the date the delegated Service employee signs and dates the acceptance of the waiver of the statutory period of limitations on Form 656." *See* IRM § 57(10)7.1(4). The IRM further provides that:

> When an Offer in Compromise is received from the taxpayer, it will be date stamped and a determination will be made whether the offer is processable.... If an offer is not processable the waiver acceptance should not be executed and the Form 656 will be returned to the taxpayer within fourteen (14) days from receipt.

*See* IRM § 57(10)9.1(1).(2).

■ Although Appellee would disagree, Appellee's argument that the revenue officer was not "authorized" to accept the "offer in compromise" necessarily requires a finding that section 57(10)9.1(1), (2) is enforceable against the IRS. For the following reasons, the Court finds that this provision is not enforceable against the IRS:

> The rules contained in the IRM have not been issued pursuant to the rulemaking procedures set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. It is true that courts may properly force agencies to follow even inter-

---

4. This language tracks the language found in section 57(10)7.1 of the IRM, providing that "[t]he Offer is considered pending from the date the delegated Service employee signs and dates the acceptance of the waiver of the statutory period of limitations on Form 656, until it is accepted, rejected or withdrawn." *See* IRM § 57(10)7.1(4).

nal agency regulations issued without APA rulemaking where failure to enforce such regulations would adversely affect "[substantive] rights of individuals." *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). Where, however, such regulations do not appear to relate to rights accorded to individuals, but instead simply function as internal operating instructions, then they are deemed to be solely for in-house agency use and are not judicially enforceable against the agency. *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981).

*First Alabama Bank, N.A. v. United States,* 981 F.2d 1226, 1230 n. 5 (11th Cir.1993).

Section 57(10)9.1(1), (2) of the IRM cannot be read to affect the substantive rights of individuals but instead simply establishes an IRS's operating procedure. As such, this provision is not the kind of rule that is judicially enforceable against the IRS. Therefore, the revenue officer's failure to comply with this IRM provision cannot be a basis for finding that Appellee's "offer in compromise" was not pending on March 26, 1993.

■ As for the bankruptcy court's reliance on the perceived equities in the case, the Court finds that it cannot affirm the bankruptcy court's application of equitable estoppel under the facts of this case. Equitable estoppel will lie against the government only in the most extreme circumstances. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 434, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *see also Heckler v. Community Health Serv.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (equitable estoppel will not lie

against the government as against private litigants). "Furthermore, when a private litigant asserts estoppel against the United States, the litigant must establish that the Government engaged in affirmative misconduct going beyond mere negligence, even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Colish v. United States,* 239 B.R. 670, 676 (Bankr.E.D.N.Y.1999) (quotations, citations and alterations omitted).

■ At most, there are allegations that the revenue officer told Junco that the "offer in compromise" was not pending because the offer was not processable. Assuming these facts to be true, they cannot constitute an extreme circumstance under which the doctrine of equitable estoppel should be applied against the government. Any argument based on these allegations ignores the unequivocal language of the IRM provisions and Form 656, which was voluntarily signed by Appellee. Again, that language makes clear that once the waiver of limitations is accepted an offer is deemed pending until the offer is *accepted, rejected or withdrawn in writing.*[5] Moreover, an amended "offer in compromise" relates back to the original "offer in compromise" when the amended offer does not constitute a separate offer necessitating a separate rejection. *See In re Emerson,* 224 B.R. 577, 579 (Bankr.W.D.La.1998). This is especially true where, as here, Appellee did not withdraw his March 26, 1993 "offer in compromise," choosing instead to amend the March offer by crossing through and changing a few line items.

Additionally, the Court is persuaded by the fact that there is no evidence that a

**5.** This writing requirement makes meritless Appellee's contention that the "offer in com-

promise" was not pending because the IRS's continued collection efforts.

"section 57(10)(17).6" rejection or withdrawal letter was sent to Appellee, prior to the amendment of the original offer.[6] *Cf. United States v. McGee*, 993 F.2d 184, 186 (9th Cir.1993) (rejecting argument that "offer in compromise" was no longer "pending" after revenue officer proposed an amended offer and finding that waiver remained in effect until "offer in compromise" was either terminated, withdrawn, or formally rejected).

Finally, the Court notes that Appellee acknowledges that his CPA, Junco, "determined on the basis of Revenue Officer Kollen's letter of April 21, 1993, that Appellee Romagnolo's Offer was not 'pending' pursuant to Section 507(a)(8)(A)(ii), Bankruptcy Code, during the disputed period from March 26, 1993, through April 23, 1993, and advised Appellee Romagnolo that the taxes would be discharged because the appropriate time period since the assessment of the taxes had passed." *See* Appellee's Answer Brief at 15 (citing Junco Dep. at 9–10, 16–17). Appellee's reliance on Junco's interpretation of the revenue officer's statements and actions cannot be imputed to the government.

Because there is no basis on which to apply the doctrine of equitable estoppel, the date the revenue officer accepted Appellee's waiver of the statutory periods of limitation—i.e., March 26, 1993—is the date when Appellee's "offer in compromise" for the tax years 1982 through 1985 was "pending." This "offer in compromise" remained pending until September 3, 1993, when Appellee withdrew his appeal of the government's May 3, 1993 rejection of the "offer in compromise."

Thus, his taxes for 1982 through 1985 are priority taxes and are excepted from discharge under 11 U.S.C. § 523(a)(1)(A).

### III. CONCLUSION

Accordingly, it is **ORDERED:**

The bankruptcy court's grant of summary judgment in Appellee's favor is **REVERSED,** and this cause is **REMANDED** to the United States Bankruptcy Court for the Middle District of Florida for further proceedings in accordance with the above.

---

6. This section provides in part:

> When it is determined that the offer is unacceptable or has been withdrawn, a letter will be addressed to the taxpayer advising that the offer is rejected or that it is considered as withdrawn. The opening paragraph should show the nature of the offer (case or deferred payment), the amount of the offer, the class of tax or penalty to be compromised, the years or periods covered by the offer, and the reason for the rejection of the offer.

IRM, § 57(10)(17).6(1).